1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DANIEL LEE NEWMAN,

                  Petitioner,

    v.

K. HOLLAND, Warden

                  Respondent.

No. CV 13-3989 FFM

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

## I.  PROCEEDINGS

Petitioner, Daniel Lee Newman ("Petitioner"), a state prisoner in the custody of the California Department of Corrections, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") on June 4, 2013.  On January 8, 2014, respondent filed an answer to the Petition.  The parties have consented to have the undersigned conduct all proceedings in this case, including the resolution of all dispositive matters.  The matter, thus, stands submitted and ready for decision.

## II.  PROCEDURAL HISTORY

A Los Angeles County Court jury found Petitioner guilty of one count of possession of methamphetamine for sale (Cal. Health & Saf. Code § 11378). (Clerk's Transcript ["CT"] 113.)  Petitioner subsequently admitted that he had

1  suffered four prior convictions for which he had served prison terms.  (CT 114.)

2  He was sentenced to a total of eight years in prison.  (CT 146-47.)

3      Petitioner then appealed his conviction.  On May 3, 2012, the California

4  Court of Appeal filed an unpublished opinion affirming the judgment against

5  Petitioner.  Thereafter, Petitioner filed a petition for review in the California

6  Supreme Court, which denied review on July 11, 2012.

7      Petitioner then initiated this action.

8

9  ### III.  FACTUAL BACKGROUND

10      The following facts were taken verbatim from the California Court of

11  Appeal's opinion affirming Petitioner's conviction:

12      On November 16, 2010, about 10:00 p.m., Los Angeles

13  County Sheriff's Deputies Ulises Urbina and Brant Frederickson

14  were on patrol in Duarte when they conducted a traffic stop of a

15  pick-up truck in the 1300 block of Bloomdale.  When the truck pulled

16  over, [Petitioner] leaned into the passenger side of the truck, then

17  walked away from it toward a nearby residence.  Deputy Urbina saw

18  [Petitioner] toss something into the grass.  The deputy stopped

19  [Petitioner], put him in the patrol car, returned to the grassy area and

20  found a chewing tobacco tin with a magnet on its back in the area

21  where [Petitioner] had just tossed something.  The tin contained four

22  baggies of a substance later determined to be methamphetamine.

23      [Petitioner] did not appear to be under the influence of drugs.

24  The deputies did not find any paraphernalia for ingesting drugs in the

25  nearby area.

26      At trial, Los Angeles County Sheriff's Detective David

27  Mertens testified as a narcotics expert.  He explained that the 15.38

28  grams of methamphetamine found in the tin was a significant amount

2

because a usable quantity was only .02 grams, which is the amount needed for an average person to be under the influence. He testified that 15.38 grams was about 769 usable doses and had a street value of about $3,060. Detective Mertens opined that no one would possess that high a quantity unless it was for purposes of sale. Detective Mertens also stated that he had never encountered anyone possessing drugs in a magnetized tin for personal use, but had found such tins numerous times on people who possessed drugs for purposes of sale. He explained that the tins were used to conceal narcotics on a car, in locations such as the wheel wells, engine compartment or steering column. Detective Mertens also testified that two of the bags in the tin appeared to weigh 1.5 grams and that such bags were called "teeners" and sold for $120 each.

[Petitioner's] cousin Jonathan Heightman testified on [Petitioner's] behalf that he came out of a house in the 1300 block of Bloomdale in the evening of November 17, saw [Petitioner] being arrested, then saw police officers walking around for about 20 minutes with a flashlight apparently looking for something. He went inside for about 20 minutes, then came back outside and saw that police were still searching. He also observed that they were questioning a girl who was sitting on a curb.

[Petitioner's] father, who lived in a house in the 1300 block of Bloomdale, testified that he saw police search the stopped pick-up truck several times. The police searched the area in front of his house and in the street for a couple of hours.

[Petitioner] testified on his own behalf at trial that he walked away from the pick-up truck when he saw police because he was carrying an open container of alcohol. One of the deputies stopped

3

[Petitioner] and said to him, "Oh, I got you for open container."  The deputy placed [Petitioner] in the patrol car.  Deputies searched the area for about one to two hours.  Deputy Frederickson told [Petitioner] that they would let him go if they did not find anything in the truck.  Deputies searched the truck and its surroundings for about one to two hours.  The deputies did not let [Petitioner] go.  On the way to the police station, the deputies told [Petitioner] that if he became an informant, they would not send him to jail.

Deputy Frederickson testified in rebuttal that he never told [Petitioner] that he would let him go if there was nothing in the truck, and did not tell [Petitioner] that he could avoid jail time by becoming an informant.

(Lodged Doc. No. 6 at 2-3.)

## IV.  PETITIONER'S CLAIM[1]

The trial court violated Petitioner's rights to due process, to a jury trial, and to be free from cruel and unusual punishment by failing to instruct the jury on the crime of simple possession of a controlled substance, a lesser included offense to the crime of which Petitioner was convicted.

## V.  STANDARD OF REVIEW

The standard of review applicable to Petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (Pub. L. No. 104-132, 110 Stat. 1214 (1996)).  *See* 28 U.S.C. § 2254(d); *see also Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct.

---

[1]  In his Petition, Petitioner asserts four claims for relief.  However, each claim is premised on the purported error in failing to instruct the jury on simple possession.

2059, 138 L. Ed. 2d 481 (1997).  Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The phrase "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[3]  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  However, a state court need not cite the controlling Supreme Court cases in its own decision, "so long as neither the reasoning nor the result of the state-court decision contradicts" relevant Supreme Court precedent which may pertain to a particular claim for relief.  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (*per curiam*).

---

[2]  In addition, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

[3]  Under AEDPA, the only definitive source of clearly established federal law is set forth in a holding (as opposed to dicta) of the Supreme Court.  *See Williams*, 529 U.S. at 412; *see also Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).  Thus, while circuit law may be "persuasive authority" in analyzing whether a state court decision was an unreasonable application of Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

1     A state court decision is "contrary to" clearly established federal law if the

2  decision applies a rule that contradicts the governing Supreme Court law or

3  reaches a result that differs from a result the Supreme Court reached on

4  "materially indistinguishable" facts. *Williams*, 529 U.S. at 405-06.  A decision

5  involves an "unreasonable application" of federal law if "the state court identifies

6  the correct governing legal principle from [Supreme Court] decisions but

7  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

8  A federal habeas court may not overrule a state court decision based on the federal

9  court's independent determination that the state court's application of governing

10 law was incorrect, erroneous, or even "clear error." *Lockyer*, 538 U.S. at 75.

11 Rather, a decision may be rejected only if the state court's application of Supreme

12 Court law was "objectively unreasonable." *Id.*

13     The standard of unreasonableness that applies in determining the

14 "unreasonable application" of federal law under Section 2254(d)(1) also applies in

15 determining the "unreasonable determination of facts in light of the evidence"

16 under Section 2254(d)(2).  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

17 Accordingly, "a federal court may not second-guess a state court's fact-finding

18 process unless, after review of the state-court record, it determines that the state

19 court was not merely wrong, but actually unreasonable." *Id.*

20     Where more than one state court has adjudicated the petitioner's claims, the

21 federal habeas court analyzes the last reasoned decision. *Barker v. Fleming*, 423

22 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803,

23 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) for presumption that later unexplained

24 orders, upholding judgment or rejecting same claim, rest upon same ground as the

25 prior order).  Thus, a federal habeas court looks through ambiguous or

26 unexplained state court decisions to the last reasoned decision in order to

27 / / /

28 / / /

1  determine whether that decision was contrary to or an unreasonable application of

2  clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir.

3  2003).

4

## VI.  DISCUSSION

6      Petitioner faults the trial court for failing to *sua sponte* instruct the jury on

7  simple possession, a lesser included offense to possession of a controlled

8  substance for the purpose of sale.  According to Petitioner, the evidence at trial

9  supported a conviction for simple possession, and, thus, the trial court was

10  obligated to instruct the jury on that crime.  Moreover, Petitioner believes that the

11  jury would have opted to convict him only of simple possession, rather than of

12  possession for the purpose of sale, if the jury had been given the option to do so.

13  The court of appeal rejected this claim on the merits.  As explained below, the

14  court of appeal did not commit constitutional error in doing so.

15      This claim fails for two reasons.  First, it is not cognizable on habeas

16  review.  "Under the law of [the Ninth Circuit], the failure of a state trial court to

17  instruct on lesser included offenses in a non-capital case does not present a federal

18  constitutional question."  *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir.

19  1998); *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).  Accordingly, Petitioner

20  cannot obtain habeas relief on this claim.

21      Second, even if the claim were cognizable, it nevertheless would fail.  The

22  United States Supreme Court has never held that a trial court's failure to instruct

23  on a lesser included offense in a non-capital case violates due process of law.

24  Rather, the Supreme Court has held only that a defendant has a constitutional right

25  to have the jury instructed on lesser included offenses in capital cases. *Beck v.*

26  *Alabama*, 447 U.S. 625, 638, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980).  In so

27  holding, the Supreme Court expressly declined to state whether that right extended

28  to non-capital cases.  *Id*. at 638 n.14; *see also Gilmore v. Taylor*, 508 U.S. 333,

1  361-62, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) (Blackmun, J., *dissenting*)

2  (observing that *Beck* left open question of whether due process entitles criminal

3  defendants in non-capital cases to have jury instructed on lesser included

4  offenses).  Therefore, the state court decision cannot be said to be contrary to, or

5  an unreasonable application of, federal law as decided by the Supreme Court.  *See*

6  *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006)

7  (where Supreme Court precedent gives no clear answer to question presented, "it

8  cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established

9  Federal law'").

Accordingly, habeas relief is not warranted as to this claim.

## VII.  ORDER

The Magistrate Judge therefore orders that judgment be entered denying the

Petition on the merits with prejudice.

DATED: May 20, 2014

   /S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

8